# CHARLESTON.

## HALL *et al* v. THE PHILADELPHIA COMPANY.

Submitted September 12, 1912.   Decided May 27, 1913.

1. MINES AND MINERALS—*Contracts—Customs and Usages—Oil and Gas Lease—Construction—Domestic Purposes—Domestic.*

   A clause in a lease for oil and gas purposes, securing to the lessor "free gas for domestic purposes," read in the light of an established usage or custom, known by the parties to the

contract, is construed as conferring upon the lessor right to have gas for heat and light in his dwelling house and for the maintenance of one light at such a point as he may designate within the curtilage. (p. 575).

2. SAME—*Oil and Gas Lease—Construction.*
    Though at the date of the lease it was customary and usual for lessors to maintain, under such clause, what is known as an open, storm or flambeau light in their yards, the clause is construed, in view of the wastefulness and extravagance in the use of gas by such means, as conferring upon the lessor, right to maintain only an enclosed or economical burner for light in the yard. (p. 575).

3. SPECIFIC PERFORMANCE—*Covenant of Oil and Gas Lease— Remedy for Breach.*
    The legal remedy for violation of such a covenant being inadequate, equity will enforce specific performance thereof by appropriate remedies. (p. 575).

Appeal from Circuit Court, Harrison County.

Bill by Fabius E. Hall and others against the Philadelphia Company, a corporation. From decree for defendant, plaintiffs appeal.

*Affirmed.*

*Charles G. Coffman,* for appellants.

*Davis & Davis, E. Bryan Templeman,* and *Osman E. Swartz,* for appellee.

POFFENBARGER, PRESIDENT:

The appellants, Hall and wife, complain of a decree dismissing their bill for the enforcement of the alleged obligation imposed upon the assignee of their lessee in an oil and gas lease, by a provision thereof, securing to them gas from the wells on the premises for domestic purposes free of charge, upon condition that they make their own connections with the lessee's lines or wells.

The extent of the right conferred by this clause and the mode of its enjoyment are the matters in controversy. A large well having been completed on the premises, the appellants connected with it a service pipe leading to their dwelling house through which gas for heating and lighting the building and mainte-

nance of an open or flambeau light in the yard about twenty feet in front of the house was furnished. Denying right in the lessors to maintain an outside light, the appellee cut off the gas from this pipe. The appellants restored the connection and it was again cut off. By way of concession and as a matter of compromise, it is claimed the appellee expressed its willingness to furnish gas for a light in the yard, if the appellants would dispense with the open storm burner and use a modern enclosed light, such as the Wellsbach lamp. If there was such a negotiation, it failed and the appellee restored gas for use inside of the dwelling house only. The bill has for its purpose a mandatory injunction compelling the appellee to furnish gas to maintain the open light in the yard.

The demurrer to the bill was properly overruled. Though there may be no legal duty, as contradistinguished from a contractual duty, on the part of the appellee to furnish gas, and the relation of the parties differs in this respect from that which ordinarily confers, upon a consumer of gas or water, right to compel restoration of the service by mandamus or injunction, when it has been wrongfully discontinued, there is another element in their relation upon which the right may be consistently based and perhaps more safely and firmly. The prayer for relief is founded upon a covenant of the lease, made for the benefit of the property. In view of the manifest inadequacy of the legal remedy for violation of a covenant in a lease other than for the payment of money, courts of equity seldom refuse to enforce them when their jurisdiction is invoked for the purpose. *Gas Co.* v. *Oil Co.*, 56 W. Va. 402; 26 A. & E. Enc. L. 104. Contracts of sale of mere commodities procurable in the market are never subjects of specific performance for obvious reasons, but this contract is not within that class. Natural gas is not obtainable in the general markets as is wheat, corn, flour and live stock, and presumptively the supply of gas in question is obtainable only from the lessee. Principles declared in *Hogg* v. *McGuffin*, 67 W. Va. 456, sustain the jurisdiction on this additional ground.

The clause involved reads as follows: "First parties to have free gas for domestic purposes by making their own connections to any gas well drilled on this lease." On the interpretation or construction of such a clause, no direct authority is shown by

the briefs or has been discovered.   On the one hand, argument is submitted in support of a strict and narrow construction, imposing obligation or duty on the part of the lessee to furnish gas only for use within the walls of the dwelling house.   On the other hand, the terms "domestic purposes" are given a very broad and liberal construction, requiring the lessee to furnish gas not only within the walls of the dwelling house, but for lighting all the outbuildings within the curtilage or premises immediately connected with the dwelling house.

As the definitions of the term "domestic", wherever found, clearly show, its meaning depends upon the connection in which it is used.   A domestic servant is one who resides or works in the master's house.   Domestic animals are tame animals, as contradistinguished from wild ones.   The domestic trade, commerce or industry of a country is that which is confined within its borders, as contradistinguished from trade with foreign countries.   Derived from the Latin "domus", it means of a house or pertaining or belonging thereto or to a household, home or family, when used as an adjective.   In some sense, domestic animals are connected with the homes or the habitations of men.   Domestic commerce, industry, trade, production and consumption are such as are within the boundaries of our home country.   In a remote sense, they are connected with our homes or houses.

Of course words in a contract or other instrument are to be accorded their primary meaning or sense, in the absence of anything in the context, showing a contrary or different intention.   *Williams* v. *Oil Co.*, 52 W. Va. 81.   But the word "domestic" is a derivative one.   It expresses some relation to house or home, as the examples already given will show, and is not descriptive of the house or home itself.   This relation extends to things outside of the house as well as within it.   A house has an exterior as well as an interior, and things connected with it on the outside are clearly things of or pertaining to it.   Moreover, out-buildings and appliances are accessories of the interior, rather than the exterior because constantly used by the inmates of the house and contributing to their comfort.   The family sheltered by a house or making their home within it, are of course related to it and persons and things brought within the family circle are connected with it by reason of their in-

clusion within the family. Logically, the curtilage and messuage, including buildings, pertain to the house and residence, because connected with it and used for residential purposes. The curtilage and messuage are domestic premises. A messuage is "A dwelling house, with the adjacent buildings and curtilage, and the adjoining lands appropriated to the use of the household." Webster's Dict; Bouvier's Law Dict.; *Marmet Co.* v. *Archibald,* 37 W. Va. 778; *Gibson* v. *Brockway,* 8 N. H. 465, 470. *Davis* v. *Lowden,* 56 N. J. E. 126.

The authorities relied upon as showing the word "domestic," used as an adjective, relates to the interior of a house or dwelling, do not sustain that position. In *Wakefield* v. *State,* 41 Tex. 556, and *Richardson* v. *State,* 43 Tex. 456, it was used in a criminal statute, falling under the rule of strict construction, and, moreover, its meaning was indicated by the context. It was an exception from the statute of burglary in these words: "When the same is done by a domestic servant or other inhabitant of such house." The word "other" manifested plain legislative intent to except no person as a servant unless he was also an inhabitant or inmate of the house. In the statute construed in *Ex parte Meason,* 5 Binney (Pa.) 167, the word "servant" was not qualified by the word "domestic", nor did the court say the servant must be one whose work was within the walls of the home. The decision excluded from the protection or operation of the statute, workmen in iron mills and other places, wholly disconnected from the home, and by an *obiter dictum,* let in servants connected with the home, or "whose employment is about the house or its appurtenances, such as the stable &c. or who, residing in the house, are at the command of the master, to be employed at his pleasure, either in the house or elsewhere." Now, as always in the past, many house servants actually reside in out-buildings or servants' quarters in the curtilage, or constituting part of the messuage, and are popularly known as domestic servants nevertheless.

Nor, on the other hand, do the authorities relied upon by counsel for the appellant, as defining the terms "domestic purposes", warrant an interpretation of those words as used in the lease, extending them to all purposes for which gas can be beneficially used on the premises of a farmer, or even throughout the curtilage and messuage. Relating as they do to contracts and

laws, pertaining to water rights, these authorities have adopted what may be called a legal or judicial definition of the terms as used in that connection. The rights of riparian owners and persons through whose lands streams of water run to make use of the water, not only for household, but for all proper agricultural purposes, is termed in the law books a domestic use thereof or use for domestic purposes, to distinguish it from use for manufacturing and commercial purposes or navigation. In this connection, the terms have a well defined common law signification.

A clearer and more satisfactory index to the meaning of the terms than the definitions in any of the authorities cited is found in the usage or custom shown by the evidence to obtain in oil and gas regions. Oil and gas leases generally provide for free gas for the lessor's dwelling house or one or more dwelling houses on the premises. Such a provision is usual and customary. It is found in most of the printed forms of lease. The free gas clause either stipulates for an outside light or is generally construed by the parties as authorizing it. Nearly all lessors of improved lands on which they reside have free gas for heat and light within the dwelling and also for a light in the yard. Advised of this well nigh universal practice, the parties may well be supposed to have contracted with reference to it, and it affords a safer guide for interpretation of the clause than the definitions furnished us. A custom or usage is not allowed to control or vary the meaning of words, when they have a definite legal signification. *Bowyer* v. *Martin,* 6 Rand. 525. But, if they are uncertain or have not a fixed legal signification, a particular custom may be proved as having been within the knowledge of the parties at the time and impliedly adopted as a part of the contract. *Bowyer* v. *Martin,* cited; *Johnson* v. *Burns,* 39 W. Va. 658; *Cobb* v. *Dunlevie,* 63 W. Va. 398, 407; *Anderson* v. *Lewis,* 64 W. Va. 297; *Lumber Co.* v. *Wilson,* 69 W. Va. 598.

As to the mode of use, the contract is silent. It contains not a word respecting the sort of burners to be used for light or stoves or fires for culinary and heating purposes. For outside lights, enclosed burners were not generally used, if at all, at the date of the lease, and this usage or custom is relied upon as defining, for the purposes of the contract, the mode of use. That

the flambeau light involves an extravagant and wasteful consumption of gas is fully established by the evidence.   In a given time, it will consume about one hundred times as much gas as an enclosed mantel burner and gives no better light.   The practice usual and customary at the date of the lease may have been determinative of the mode of use at that time, but it cannot be regarded as having settled it for all time, for it did not cover the future.   Its observance at the date of the contract was not inconsistent with intent to adopt in the future such measures as economy in the use of gas might suggest or dictate.   In the early development of the use of natural gas, the instrumentalities for its application for practical purposes were crude and unscientific and not productive of the best results.   Time has changed all this by the disclosure of new and more scientific appliances.   Here, as elsewhere, we think the law recognizes and assumes, in the absence of proof to the contrary, intent on the part of the lessee and lessor to carry the contract into execution in such manner as to avoid useless and unnecessary waste.   This question arose in *Gas Co.* v. *Saltesburg,* 20 Atl. Rep. 844, 138 Pa. 250, and the contract there involved would have been construed by the court as requiring the use of economical burners, if the evidence had established their efficiency and practicability of their use.   That case was decided in 1890, since which time great progress has been made in the improvement of the methods of use of natural gas.   As to the efficiency of enclosed gas lights for outside use, the evidence in this case leaves no room for doubt and it puts beyond all question the extravagance and wastefulness in the use of gas by the maintenance of open lights.

These principles and views result in the conclusion that the contract entitled the plaintiffs, the lessors, to the customary one light at such place within the curtilage and outside of the house, as they may designate, but they must use for that purpose an economical burner, to be provided by themselves.

The course of the examination of some of the witnesses suggests an inquiry as to whether the principle of economy, here adopted and applied in the construction of the contract, may be carried so far by the lessee as to compel the lessors to use a particular kind of stove or fire in heating their dwelling.   As to that, of course, we decide nothing, since it is not involved, but it is not inappropriate to say, in this connection, that the

principle is not to be applied or enforced to an unreasonable extent. There may be much less room or cause for complaint on the ground of wastefulness in the use of crude or improvised inside burners than in the maintenance of an open outside light, and the cost of approved stoves or open fires is relatively much greater than the provision of a small burner for light.

In its dismissal of the bill, the court properly found for the defendant on the single issue, whether the plaintiffs were entitled to gas for an open light in the yard, arising upon the single cause of action, stated in the bill, wherefore the decree complained of will be affirmed.

ROBINSON, JUDGE, concurs in result only.

*Affirmed.*