## UTILITIES PRODUCTION CORPORATION v. CARTER OIL CO.

### No. 560.

District Court, N. D. Oklahoma.

Jan. 10, 1933.

D. A. Richardson, of Oklahoma City, Okl., E. J. Lundy, of Tulsa, Okl., and J. R. Harmon, of Chicago, Ill., for plaintiff.

S. J. Montgomery, L. G. Owen, and James A. Veasey, all of Tulsa, Okl., for defendant.

FRANKLIN E. KENNAMER, District Judge.

The purpose of plaintiff's bill is to obtain an injunction against the defendant's use of residue gas, as well as an accounting for residue gas used by defendant. Plaintiff is the gas lessee in gas leases covering and affecting lands allotted to members of the Osage Tribe of Indians. The lands are commonly referred to as the Osage Nation. The defendant, Carter Oil Company, is the oil lessee of oil leases covering fourteen tracts of the land on which plaintiff has gas leases. Section 3 of the Act of Congress approved June 28, 1906, 34 Statute at Large, 539, 543, reserved the oil and gas under the lands in the Osage Nation to the Osage Tribe, and by subsequent acts of Congress the reservation extends to April 8, 1958 (Act March 2, 1929, § 1 [45 Stat. 1478]). By appropriate reso-. lution the Osage tribal counsel recommended that the oil and gas rights should be leased separately, and that practice has been pursued. Plaintiff claims under a gas lease executed July 14, 1919, which was approved by the Secretary of the Interior on December 20, 1919, and covers 166,400 acres, included in which are the lands covered by defendant's fourteen oil leases. The defendant has drilled numerous wells and has produced oil from the lands covered by its leases, and has constructed a casinghead gasoline plant at a cost of approximately $1,000,000 in the vicinity of its leases. The gasoline plant is not located upon any of the oil leases held by the defendant but is in the vicinity thereof. The defendant purchases casinghead gas from sixteen other oil leases, in addition to the casinghead gasoline from its fourteen leases, for its casinghead gasoline plant. The greater part, if not all, of the sixteen oil leases from which casinghead gas is purchased by the defendant, covers lands included in the gas leases held by plaintiff.

Gas from an oil well saturated with oil vapors is commonly called "casinghead gas." Gasoline is extracted from casinghead gas by gasoline manufacturers, and after the extraction of gasoline from casinghead gas, there remains a residue or dry gas. The rights of the gas lessee and the oil lessee to such residue gas constitute the controversy herein presented.

The evidence shows, as charged in plaintiff's bill, that the defendant has been making various uses of the residue gas. They are as follows:

1. For operating the leases from which such residue gas was produced, and defendant's adjoining leases.

2. For fuel in operating its casinghead gasoline plant.

3. For drilling oil wells on and operating other leases owned by the defendant but not adjoining leases from which it takes the casinghead gas.

4. Selling and otherwise disposing of the residue gas to other persons or corporations for purposes disconnected with the operation of the leases, and in returning residue gas as a bonus for casinghead gas contracts.

5. Returning residue gas into the ground for the purpose of repressuring oil wells, and for using the residue gas as fuel for its compressor stations and compressors located upon leases other than those from which the casinghead gas is produced.

The questions here presented for determination are new. Such a dispute has never had the consideration of a court because of the peculiar manner in which the rights of the respective parties were acquired. Precedent is, therefore, not available to assist in the solution of the questions involved in this action, but the same must be determined solely upon the written leases under which plaintiff and defendant assert their rights to the residue gas, as well as the regulations promulgated by the Secretary of the Interior relative to such leases. Such regulations will be referred to briefly and only the pertinent parts thereof will receive consideration.

The applicable provisions of the leases and regulations are as follows:

Paragraph 13 of the plaintiff's lease, which lease grants plaintiff its rights to gas in the Osage Nation, provides: "All casinghead gas shall belong to the oil lessee." The clause of the oil lease affecting casinghead gas under which defendant asserts its rights is as follows (section 12): "All casinghead gas shall belong to the oil lessee, and when used for the manufacture of gasoline shall be metered and be subject to a royalty of 16⅔% of the market value of the gasoline content, and all such gas not utilized by the oil lessee on his leased premises or for operating other adjoining leases within the Osage Reservation, shall belong to the gas lessee, subject to the prescribed royalty of 16⅔%."

Section 6 of the oil lease is as follows: "The lessee accepts this lease with the understanding that the lands covered thereby may be leased to some other party, who shall have the exclusive right to all gas except as herein provided."

A similar provision is included in the gas lease as section 6, which is as follows: "The lessee accepts this lease with the understanding that the lands covered thereby may be leased to some other party, who shall have exclusive right to all oil except as herein provided."

The oil lease provides, in section 16, that: "This lease is subject to the regulations now or hereafter prescribed by the Secretary of the Interior relative to such leases, all of which are made a part of this lease: Provided, that no regulations made after the approval of this lease shall operate to affect the term of lease, rate of royalty, rental or acreage, unless agreed to by both parties."

The gas lease provides, in section 17, that the lease is subject to the regulation approved August 26, 1915, and all regulations which may thereafter be prescribed by the Secretary of the Interior, with the provision that no regulation was to be made after the approval of the lease which should operate to affect the terms of the lease, rate of royalty, or acreage, unless agreed to by both parties, which provision is similar to section 16 of the oil lease.

Section 13 of the oil lease provides that the gas lessee should furnish the oil lessee sufficient gas for drilling and operating purposes, making provision for the rate to be paid for the gas, and for the necessary connections.

Section 14 of the gas lease contains similar provisions as section 15 of the oil lease. Both leases provide that in the event of the drilling of a well, the oil lessee shall be entitled to the oil, and gas lessee to the gas, regardless of which lessee drills the well. Provision is made for an adjustment of the costs in such event. The provisions evidence the intention of separating the rights to the oil and the gas.

Regulations have been promulgated by the Secretary of the Interior respecting casinghead gas. On May 13, 1919, a regulation was made which, among other things, provides: " * * * Any casinghead gas coming direct from the wells and not utilized by the oil lessee, as above provided for (for the manufacture of gasoline) or for operations as provided for in section 12 of the oil lease, shall be delivered to the gas lessee at a central point on the oil lessee's gathering or carrying lines at the same schedule of prices as fixed for delivery of residue gas at gaso-

line plants into the line or lines provided by the gas lessee; also, all gas, after extraction of gasoline and not used for operations under the terms of paragraph 12 of the oil lease, shall be delivered to gas lessee at points where the gasoline is extracted at as high a pressure as the efficient operations of such a plant will permit, and where same is delivered at a pressure not above 50 pounds, the oil lessee shall receive 1¢ per thousand cubic feet and an additional ½¢ increase for each additional 50 pounds pressure, not exceeding 3¢ per thousand cubic feet * * * ''

On July 23, 1919, the following regulation was made:

"1. The basis for determining royalty on casinghead gas in the Osage Reservation, Oklahoma, used by oil lessees for the manufacture of gasoline, or sold by oil lessees, to casinghead gasoline plants, shall be 16⅔ per cent of 33⅓ per cent of the gross proceeds of the sale of the gasoline extracted, the same to be not less than the Chicago tank wagon price on date of sale. The other 66⅔ per cent on which no royalty is paid is allowed for plant operations."

"5. When oil lessees manufacture casinghead gasoline from casinghead gas produced from their own leases, payment for the royalty interest of the lessor shall be at the rate of 16⅔ per cent (or the royalty specified in the lease) to be computed on 33⅓ per cent of the gasoline extracted as provided in paragraph 1, and which shall be subject to change as provided in paragraph 4."

"9. Oil lessees shall secure the consent of the Superintendent to manufacture gasoline from casinghead gas produced on their approved leases. * * *

"11. The residue or dry gas remaining after extracting the gasoline, not used for developing purposes on the leases where it was produced or adjoining leases in Osage County, shall be delivered to the gas lessee as provided in amended paragraph 49 of the rules and regulations governing leases in Osage County, and all contracts for the sale of casinghead gas shall contain a provision to such effect."

■ It clearly appears that the leases under which the parties to this action assert their rights are subject to the regulations promulgated by the Department of the Interior. Those regulations are binding upon each of the lessees for the reason that the contracts of lease contemplated the making of such regulations and are, therefore, binding. The only restriction in the making of regulations was limited to the prohibition against affecting the term of the lease, the rate of royalty, rental, or acreage, unless agreed to by both parties. In the instant case, no regulation has been promulgated which invades the rights of the parties as secured by the terms of the leases. It cannot be successfully urged that the requirement of the oil lessee that he deliver the residue or dry gas to the gas lessee changes the rate of royalty or imposes a charge in the nature of royalty. The regulations reduced the royalty to be paid for casinghead gas by the oil lessee, in, that the original royalty was fixed at 16⅔ per cent. of the market value of the gasoline content, while the regulation of July 23, 1919, fixed the royalty at 16⅔ per cent. of 33⅓ per cent. of the gross proceeds of the sale of the gasoline extracted. There can likewise be no controversy over the fact that between the oil lessee and the gas lessee, the oil lessee shall have the right to all casinghead gas. This provision is included in both the gas lease and the oil lease. The only question for determination is what uses the oil lessee may make of residue gas, as all residue gas to which the oil lessee is not entitled for its use in the operation of its oil leases, and leases adjacent thereto, is to be delivered to the gas lessee. A determination of that question involves a consideration of the appropriate provisions of the leases and their constructions.

■ It is suggested in the defendant's brief, although no issue was made at the trial of the case, that there is a want of equity jurisdiction. It is asserted that the ordinary remedy of the plaintiff, for the value of the gas alleged to be unlawfully used by the defendant, is at law for conversion. It is also insisted that there is lacking mutuality in remedy, as defendant could not obtain specific performance to compel the plaintiff to take the residue gas, as the plaintiff, or gas lessee, has an option in regard thereto, as shown by the regulations of the Department of the Interior. It is not necessary to determine whether there is a mutuality in remedy of the parties hereto, as an accounting and an injunction are sought, and thus sufficient grounds are alleged and established for the invoking of the equity jurisdiction of the court. See Lyons Milling Co. v. Goffe & Carkener (C. C. A. 10th) 46 F.(2d) 241; Quality Realty Co. v. Wabash Ry. Co. (C. C. A. 8th) 50 F.(2d) 1051; Hattiesburg Lbr. Co. v. Herrick (C. C. A. 5th) 212 F. 834.

The plaintiff contends that the defendant's right to use residue gas is limited to the purpose of operating the lease from which

the casinghead gas was produced, and the oil lessee's adjoining leases. The defendant takes the position that by reason of the provision in the leases that the oil lessee shall have the right to the casinghead gas, that it is entitled to the residue gas and may use the same for any and all purposes, but that in order to prevent waste it has delivered the residue gas, for which it has not had other uses, to the plaintiff, or gas lessee. The parties agree that the oil lessee may use the residue gas or the casinghead gas for the purpose of operating the leases from which the casinghead gas was taken, and all of the adjoining leases of the oil lessee. It becomes necessary to consider the uses to which the residue gas has been put by the defendant in order to determine if its uses have been limited to those prescribed in the leases and regulations.

There can be no doubt but that whatever residue gas was returned to defendant's oil leases, from which the casinghead gas was produced, for the usual operating purposes, comes within the rights granted the oil lessee. It is equally clear that whatever quantity of residue gas was returned to the oil leases from which casinghead gas was produced, which casinghead gas was purchased by the defendant for its gasoline plant, for use in operating the oil leases, is a proper use to which the oil lessees may make of residue gas. The oil lessee may also use whatever quantity of residue gas is required for the ordinary and usual operating purposes upon all of its oil leases adjacent to the lease from which the casinghead gas was produced. These uses are specifically referred to in the leases and regulations. The oil lessee cannot use residue gas or casinghead gas for the operation upon leases which are not adjacent to the leases from which the casinghead gas is obtained, as no authority for such use is given by the terms of the leases. "Adjacent," as used in the lease, should mean an adjoining or a lease touching upon the lease from which the casinghead gas is produced, and should not be extended to mean leases separated from the lease from which the casinghead gas is obtained, by other leases or tracts of land. The building of a casinghead gasoline plant was of advantage to the Osage Tribe and was a source of revenue to the lessor. The successful operation of the oil leases and the extraction of gasoline from the casinghead gas required a casinghead gasoline plant. The operation of the casinghead gasoline plant should be considered a part of the operation of the oil leases, as such a plant was required for the most advantageous

disposition of the casinghead gas produced by the oil lessee. The use of residue gas as a fuel to operate the gasoline plant should be considered a part of the operation of the leases, and the oil lessee should be permitted to use the necessary residue gas for such purposes. Compressors have been installed in the plant and residue gas is used as a fuel for them. It clearly appears that compressors were required for the operation of the oil leases, and as it is a parcel of the operation, the oil lessee should be entitled to use the necessary residue gas for operating the compressors. The compressors for which residue gas is used are located at the casinghead gasoline plant and are used in connection therewith, and also upon an oil lease of the defendant. The operation of the compressors is necessary for the operation of the leases and the casinghead gasoline plant, and by reason of such necessity the defendant may properly use the residue gas for such compressors.

Another use of residue gas which has been employed by the oil lessee, and which is attacked by the gas lessee in the action, is the repressuring of the oil leases so as to increase the production of both oil and casinghead gas therefrom. The record shows that the casinghead gas produced from the leases of defendant came from the oil sand. The gas was dissolved in the oil. When the gas is exhausted the oil is more difficult to lift to the surface and a process has been devised by which gas is injected into the oil formation to restore as much as possible the original gas energy which is required to expel the oil from the sand into the opening made by the well. The repressuring of wells is as much an operation of the oil lease as the use of any other device for the lifting of the oil and the extracting of the oil from the oil sand. Such a use is clearly comprehended within the rights bestowed upon the oil lessee as an operation of the lease. The return of the residue gas into the well for repressuring purposes does not constitute a waste or loss of the gas, as it is again obtained from the casinghead gas after gasoline is extracted therefrom. The repressuring of wells for the purpose of increasing production is an incident to operation, as that term must necessarily comprehend the drilling of the wells and the producing of the oil therefrom. However, residue gas may only be used to repressure wells upon leases from which the casinghead gas is produced, or in wells upon leases adjacent to those from which casinghead gas is obtained.

It is urged that repressuring of oil wells was not employed at the time defendant ob-

86

tained its oil leases, and that the use of residue gas for repressuring of wells was not contemplated. This contention is not sound. The leases for both oil and gas were granted by the Osage Tribe for royalties upon the oil and gas produced from the lands. Improved methods of drilling and producing are necessary for the successful operation of the leases, and it was undoubtedly within the contemplation of the parties to the leases that improved and modern methods should be used for the production of oil from the lands which would be advantageous to both the lessor and the lessee. This proposition has been sustained by many authorities. Jones v. Forest Oil Co., 194 Pa. 379, 44 A. 1074, 48 L. R. A. 748; Hall v. Philadelphia Co., 72 W. Va. 573, 78 S. E. 755; Bassell v. West Virginia Central Gas Co., 86 W. Va. 198, 103 S. E. 116, 12 A. L. R. 1398.

 The oil lessee, the defendant herein, is without right to dispose of residue gas as a bonus for casinghead gas contracts, and cannot use or employ the residue gas for any purpose other than the operation of the oil leases, or leases adjacent thereto. The adjacent leases upon which residue gas may be used by the oil lessee must be limited to leases within the Osage Reservation.

A definite and clear intent is reflected in the leases and regulations, showing that the oil lessee shall be entitled to the oil produced from the lands covered by his leases, and the gas lessee shall have the gas produced from such lands over which the gas lease extends, subject to the uses provided, to wit: The operation of the leases and those adjacent thereto. The propriety of such a method of producing oil and gas is not the subject of this controversy. The oil lessee and the gas lessee contracted with the Osage Tribe with knowledge of the separation of the gas rights from the oil rights, and each undertook the operation of their respective leases subject to this clearly expressed intention. It is not necessary to consider the expenditures made or the advantages acquired by either the gas lessee or the oil lessee under their respective leases, as their rights are fixed by the leases and regulations. The defendant should account to the plaintiff for all residue gas used by it for the operation of leases not adjacent to the leases from which the casinghead gas was produced, and should also account to the gas lessee for all residue gas used by it other than for the operation of the oil leases from which the casinghead gas was produced and the leases adjacent thereto. The disposal of residue gas by the defendant as a bonus for casinghead gas contracts is not within the

rights of the oil lessee, and it should account to the plaintiff for all residue gas disposed of for this purpose. The uses of residue gas for the operation of the lease from which the casinghead gas was produced and the operation of the leases adjacent thereto, as well as the return of residue gas to leases not owned by the defendant, but from which it obtained casinghead gas by purchase, the use of residue gas as fuel to operate its gasoline plant and compressors, and for repressuring the leases for the purpose of increasing production of oil and casinghead gas, are proper uses by the oil lessee, and plaintiff is not entitled to an accounting for such uses. Neither is plaintiff entitled to injunctive relief against the continued use of the residue gas by the defendant for these purposes.

Decree may be entered in accordance with the conclusions herein announced.