# CHARLESTON.

## PITTSBURGH & WEST VIRGINIA GAS CO. v. ELMUS F. RICHARDSON.

Submitted September 3, 1919.   Decided September 9, 1919.

1. MINES AND MINERALS—*Gas Lease—Free Use by Lessor for Domestic Purposes.*

    An owner of real estate who has leased the same for the production of oil or gas therefrom, with a stipulation in such lease that he shall be allowed to use at his residence gas from any well drilled upon the premises for domestic purposes, free of charge, is entitled, in case a producing well is drilled upon such premises, to such quantity of gas produced therefrom as is reasonably necessary for his domestic uses, for the purposes to which such natural gas is ordinarily devoted.   (p. 414).

2. SAME—*Gas Lease—Reservation of Free Gas for Domestic Purposes—Meters.*

    A regulation by a lessee in an oil and gas lease for the establishment and maintenance of meters upon lines furnishing free gas to the lessor, under the terms of the lease providing that such lessor is entitled to the use of gas free of charge for domestic purposes, is a reasonable and proper regulation, and a court of equity will enjoin such lessor from interfering with or obstructing such lessee in the installation, maintenance or reading of such meters.   (p. 414).

3. GAS—*Lessors Free Use of Natural Gas—Report as to Amount—Injunction.*

    A regulation by the Public Service Commission of West Virginia requiring all producers of natural gas who furnish any of their product to persons free of charge to measure such part thereof by a meter, and to report the amount thereof to the Commission at certain intervals, is a reasonable and proper regulation, and any interference or obstruction upon the part of such free user of gas to the carrying out of such regulation will be enjoined by a court of equity.   (p. 416).

Case Certified from Circuit Court, Marion County.

Suit for injunction by the Pittsburgh & West Virginia Gas Company against Elmus P. Richardson. Demurrer to bill sustained, and temporary injunction dissolved, and question as to sufficiency of bill certified.

*Reversed, temporary injunction reinstated, cause remanded.*

*Law & McCue,* and *H. H. Rose,* for plaintiff.

RITZ, JUDGE:

Plaintiff is the owner of a lease for oil and gas purposes on a certain tract of land owned by the defendant, by the terms of which lease the defendant is entitled to have free gas for domestic purposes for one house from any gas well drilled or utilized on said premises. A gas well was drilled upon the premises, and in accordance with the terms of said lease defendant was allowed to make connection with plaintiff's gas line in order to secure a supply of gas for his domestic purposes, and the same has been continuously furnished to him under the terms of said lease for many years. In July, 1915, the Public Service Commission of West Virginia adopted a rule providing that all gas furnished without charge within the state should be metered, and that reports should be made to it monthly of the quantities of gas so furnished. The plaintiff's bill alleges that in order to comply with this provison, as well as in order to be in a position to protect itself against the waste of gas by the defendant, it desired to install a meter upon the pipe supplying gas to the defendant's residence. To this the defendant objected and, the plaintiff having installed said meter, the defendant removed the same. This suit was then brought and an injunction asked to restrain the defendant from interfering with the plaintiff in the installation of a meter upon his supply line, and the maintenance and reading of the same at proper intervals. A temporary injunction was granted, but subsequently when the defendant appeared and demurred to the bill the demurrer was sustained, and the temporary injunction dissolved. The question arising upon the sufficiency of said bill is now certified to this Court.

The plaintiff insists that it is entitled to establish a meter upon the defendant's supply line, entirely at its own expense, as one of the practicable ways of securing information for the proper regulation of its business, and also in order that it may comply with the regulation made by the Public Service Commission of West Virginia. It is a little difficult to under-

stand why the defendant objects to having the quantity of gas used by him ascertained in this manner. It involves no expense to him, nor does it appear how it can in any manner inconvenience him in the exercise of his right. The quantity of gas to which the defendant is entitled under this free gas clause in his lease is not unlimited, but is only such amount as is customary and reasonable for his domestic uses. *Hall* v. *Philadelphia Co.*, 72, W. Va. 573; *Harbert* v. *Hope Natural Gas Co.*, 76 W. Va. 207. It cannot be said that the plaintiff has any arbitrary right to determine such amount. Neither has the defendant the right to say that he may use the gas produced to any extent which his wants, real or capricious, may demand. He is entitled under his contract only to so much gas free of charge as is ordinarily used, and as is reasonably necessary for such domestic purposes as natural gas is usually devoted to. This being true, it is entirely proper for the plaintiff to adopt such regulatory measures as may be practicable and appropriate for the purpose of determining that its product is not being wasted. Whatever production of gas remains after the free use thereof by the defendant is the property of the plaintiff. If the defendant uses more gas than his reasonable wants require, if gas is wasted by him, either because of defective appliances, or because of excessive use thereof, to the extent that such quantity exceeds his reasonable ordinary requirements, he is taking the property of the plaintiff. It is represented by the plaintiff that this free gas is in many instances furnished through pipe lines constructed by the users thereof. These lines become out of order; they leak, and much gas is wasted in this way. These leaks can only be determined by a system of continuous inspection, unless meters are allowed to be installed, in which case such meters will give information as to any excessive use and waste, and lead to the repair of any defects or leaks in the supply line, or the correction of any wasteful use of the substance. We are very clearly of the opinion that inasmuch as it appears from the allegations of the bill that the attachment of this meter to the supply line of the defendant is a practicable and appropriate way of detecting any loss of gas by leaks or wasteful consumption of the same, and further

that it will not in any way hinder or obstruct the defendant in the full and free exercise of his rights, the plaintiff had and has a right to enforce such regulation, and that the attempt of the defendant to interfere with it in the installation, maintenance and reading of such meter is an invasion of its right in this regard, which a court of equity will prevent.

Aside from the right of the plaintiff to protect its property by this regulatory measure, it would seem that the authority of the Public Service Commission to make the regulation which it has made is entirely justified. It is shown by the bill that the amount of gas delivered to free gas consumers, so far as it has been able to be accurately measured, is something like thirty times as much as is delivered to other consumers for similar service. One of the duties devolved upon the Public Service Commission is to regulate the distribution of natural gas, and undoubtedly the purpose of the regulation it has adopted is to prevent the waste or improper use thereof to the end that as large an amount as possible may be devoted to the beneficial uses of the inhabitants of the state. The regulations adopted by the Public Service Commission are appropriate, to say the least, for the effectuation of this purpose, and it may be said that not only does the plaintiff have the right to install these meters with the view of giving effect to the Public Service Commission's regulation, but it is its duty to do so, and it is entirely competent for a court of equity to restrain anyone who interferes with the discharge of such duty.

We are, therefore, of opinion to reverse the decree of the circuit court sustaining the demurrer and dissolving the injunction, overrule the demurrer, reinstate the temporary injunction, and remand the cause for further proceedings.

*Reversed, temporary injunction reinstated, cause remanded.*