No. 25,399.

J. H. DOOLITTLE, *Appellee,* v. E. D. WILSON, doing business as THE TWIN CITIES GAS COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

1. GAS LEASE—*Proposition of Lessee to Furnish Free Gas for One Dwelling— Lessor Added Provision for Free Gas for Additional Dwelling—Acceptance of Modification by Lessee.* A landowner received for execution, from one with whom he was negotiating, a gas lease of part of his land. The instrument provided for free gas to heat and light one dwelling house on the leased premises. The landowner added to the provision for free gas the words "and one additional dwelling house," signed the modified instrument, and returned it to the lessee, with a letter stating the addition was a small matter, but would be of material convenience to a dwelling house on adjoining land, described with certainty. *Held,* .the lessee, on receipt of the lease and letter, merely had before him a counter offer, which he was privileged to accept or reject, and no contract had been concluded.

2. SAME—*Explanatory Letter Part of Lease Contract When Accepted.* The explanatory letter constituted part of the lessee's manifestation of offer, and the full disclosure, being in writings signed by the lessor, should be considered in determining the meaning of the offer.

3. SAME—*Terms of Lease Included Free Gas to Two Described Dwelling Houses.* The offer was an offer to grant a gas lease of land on terms which included free gas to heat and light a· dwelling house on the premises and the additional described dwelling house.

4. SAME—*Proposition in Writing by Lessee—Counter Proposition by Lessor— Lease Retained by Lessee—Contract Completed.* The lessee did not reply to the letter, but made no counter proposal, retained the lease, went into possession of the leased land, and proceeded to develop its gas resources. *Held,* the lessor's offer was accepted as made, and when the lessee's acceptance was manifested a contract was formed.

5. SAME—*No Obligation to Furnish Free Gas to Any Dwelling Not Described in Lease.* The lessee was not obligated to furnish ·gas for a dwelling house not referred to in the contract.

Appeal from Chase district court; WILLIAM C. HARRIS, judge. Opinion filed July 5, 1924. Reversed.

*Gilbert H. Frith,* and *Louis E. Clevenger,* both of Emporia, for the appellant.

*Owen S. Samuel,* and *Orrin L. Isaacs,* both of Emporia, and *Dudley Doolittle,* of Strong City, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one to enjoin discontinuance of natural-gas service to a residence. Plaintiff prevailed, and defendant appeals.

Defendant owns gas-distributing systems in the cities of Cottonwood Falls and Strong City. Plaintiff's son owns gas-producing land in the vicinity. After negotiations, defendant submitted to plaintiff's son for execution a gas lease of a portion of the land. The blank for the number of acres was not filled, and the instrument provided for free gas to heat and light one dwelling house on the premises. The proposed lessor modified the instrument, executed it, and returned it to defendant, with the following letter, dated January 11, 1922:

"Herewith I return to you, executed by Mrs. Doolittle and myself, oil and gas lease submitted to me in your letter of January 7, 1922. You will observe that the only change I have made is in the way of additions—that is, to insert the approximate number of acres, and the words 'and one additional dwelling house.' I assume that this additional dwelling house will not be objected to by you. It is a small matter, but would be of very material convenience to my tenant house on my farm that is now occupied by Harris in the same section."

Defendant acquiesced in the modifications and proceeded to develop the gas resources of the land described in the lease. On March 1 the lessor wrote to defendant the following letter:

"In pursuance to the gas lease on one of my farms west of Strong City, on which you recently struck gas, and from which you are now using the gas, I am entitled to have gas free of cost to me for two dwelling houses. One of those houses is the dwelling house on the farm, and I wish to designate the dwelling of my father, J. H. Doolittle, in Strong City, as the other which is to receive free gas."

The defendant was under the impression an order of the public utilities commission prohibited free service in Cottonwood Falls and Strong City, and so advised the lessor. The letter also contained the following paragraph:

"Our contract or lease calls for free gas for buildings now on place and one additional dwelling, which was inserted by yourself and explained in your letter of January 11 that this was your tenant house on your farm that is now occupied by Harris in the same section. We will be very glad to furnish you with a connection to supply the Harris dwelling, should you desire it, but can see no possible way whereby we could furnish your father in Strong City with free gas."

37—116 KAN.

The lessor replied that he put a different interpretation on the public utilities commission order, and said:

"It is true that I had it in mind originally to pipe gas from the well on the Ballew place over to my other farm occupied by Arthur Harris. I did not consider that as a closed proposition, however, and felt in nowise obliged to designate the Harris dwelling house to the exclusion of any other one besides the Ballew residence that I might finally designate. Had my family remained in Strong City I should have designated my home there."

The public utilities commission construed its order as not applying to the requested service, and on March 24 defendant's attorney wrote the lessor as follows:

"I beg to differ with you in that I do not believe that it was the letter of the contract that free gas should be furnished off the premises drilled upon. It is customary to furnish free gas upon the premises, but it is not customary to do so elsewhere. However, the company and myself appreciate the lease was executed by you, and are only too glad to show our appreciation in some substantial manner, and I am authorized to say to you that the company will furnish free gas to your father's residence in Strong City, at least until further notice."

Pursuant to this letter defendant supplied the Strong City residence with gas. In June, 1923, defendant notified the lessor the service would be discontinued. The lessor protested and gave the following counter notice:

"The gas which you furnish to the two residences is a part of the compensation for my executing to you the lease, and remains a material condition of that lease. I also give you further notice that I shall not voluntarily permit the changing of the terms of the lease, and in order that my position may be definitely known, no further cash compensation will be paid to the Twin Cities Gas Company for gas used on the farm, or at my father's house, the two dwelling houses which have been designated under the terms of the lease."

On July 2, 1923, defendant replied as follows:

"In the first place, it is not my intention to abandon or release the lease on your farm. It is, however, my intention to comply with the lease to the letter and continue it in full force and effect. Secondly, it is my intention to discontinue supplying free gas to your father's residence in Strong City after August first of this year. We wish to withdraw this courtesy, as your father's name or residence does not appear in the lease, and as, by your letter of January 11, 1922, you define the meaning of the additional dwelling mentioned in the lease to be that of the cottage occupied-by Harris in the same section as that of the lease. Owing to these facts, there is no question but that you are entitled to free gas in the residence occupied by Harris, but not for your father's residence in Strong City. I would not have accepted your lease had it not been for the specific location of the additional dwelling mentioned in your letter attached to the lease. . . . I have supplied your

father with $241.70 worth of gas during the year, and I feel that this is entirely too much courtesy for a concern of this size to put out and get nothing in return."

When the lessor signed the instrument forwarded to him for execution, he concluded no contract. He had modified the instrument in what proved to be a very material matter, and the lessee had not consented to the modification. When the lessee received from the lessor the modified instrument and the letter there was still no contract. The lessee merely had before him a counter offer, which he was invited to accept, but which he was perfectly free to reject. Expression was given to the lessor's offer by the addition to the instrument and by the letter. Without the letter the offer would have been indefinite. There would have been no certainty regarding location of the additional dwelling house, or probable amount of gas which would be necessary to supply it, and if the grant were accepted the lessee would be exposing himself to a claim of power on the part of the lessor virtually to name his own terms after a gas well had been brought in. The law does not favor recognition of such vague offers. It requires reasonable certainty, so that, on acceptance, duties and obligations may be known, and contention, strife and litigation may be avoided. Without such certainty there can be no exact concurrence in offer by acceptance, and consequently no contract.

The letter gave certainty to the modification of the first draft of the lease. It specified a particular house to be convenienced and indicated slight detriment to the lessee. It appears later in the correspondence that the lessor did "originally" have the Harris house in mind. Whatever he had in mind, the offer is to be judged by the disclosure of it made to the lessee. One who tenders an offer in such a way that it bears a certain meaning is not permitted to deny it had that meaning.

In determining the meaning of an offer, the entire disclosure of it must be considered so far as the rules of evidence permit. In this instance the offer was manifested by writings signed by the lessor. The manifestation embraced the modification of the original draft of the lease and the explanatory limitation of the modification. They are to be construed together. So considered, the offer has but one fair and reasonable meaning: It was an offer to grant a gas lease of land, on terms which included gas to heat and light

one dwelling house on the premises and gas to heat and light the Harris house. The lessee rightfully so understood the offer. The fact is not material, however, because, with ambiguity in the modification of the instrument removed by the accompanying explanation, the offer spoke for itself, no matter how the lessee might understand it.

The lessee did not reply to the letter, but he made no counter proposal, retained the lease, went into possession of the lessor's land, and proceeded to drill gas wells there. That constituted acceptance of the offer as made, and when the lessee, by his conduct, manifested acceptance of the offer, which had not been revoked, a contract was formed, binding on both parties.

The result of the foregoing is, the lessee was not obligated by the lease to supply gas to the Strong City residence. It is not contended that any subsequent contract to supply the Strong City residence with gas was made, and the correspondence discloses none.

The judgment of the district court is reversed, and the cause is remanded with direction to deny the injunction.