## Warfield Natural Gas Co. v. Jude.

(Decided Oct. 30, 1935.)

114

KIRK and WELLS for appellant.

J B CLARK and C. F. PACE for appellee.

Opinion of the Court by Stanley, Commissioner—Reversing.

We have a motion for an appeal from a $200 judgment recovered by Henderson Jude against appellant, Warfield Natural Gas Company, for impairment of his health caused by the alleged negligent and wrongful cutting off of the gas supply to his home.

The appellant held an oil and gas lease on the property of the appellee, which contained the provision that the lessor should have ''gas free at the well for household use if marketed off the lease.'' After a producing well was dug in 1925, appellee made application for free gas upon a form supplied by the company and it began furnishing it, thereby effectuating a contract according to the conditions of the application. Doolittle v. Wilson, 116 Kan. 576, 227 P. 345. The record stipulates that the use of the gas was subject to the terms of that contract. It contained the following stipulation:

''In consideration of the granting to this applicant the use of the gas free from the well on said land, the applicant * * * hereby agrees during all the time that applicant or his successors is entitled to gas free from well, that said gas shall be used only in an economical manner, in modern appliances and subject to the published Rules and Regulations of said Gas Company by which the applicant agrees to be bound. * * *

''This applicant shall permit the Gas Company

to disconnect the supply hereunder * * * upon notice as set forth in its Rules and Regulations.''

The rules and regulations referred to in the quoted provision were copied in full on the application, and, among others, contains the following with reference to the use of this gas and appellant's right to deny appellee the use thereof:

"2. The consumer shall use all due care to prevent waste of gas.

"3. The authorized agents of the Company shall at reasonable times, have free access to the premises of the owner with the right to shut off the gas and remove its property from the premises for any of the following reasons: * * *

"5. For waste of gas from consumers' lines, connections or appliances.

"6. For failure to comply with these rules and regulations or any of them or for violation of any of them.''

The appellee laid a service line from the gas well to his dwelling and installed appliances and equipment. As part of the required equipment, he installed two regulators, which are necessary to control the flow of gas. It was the duty of appellee to maintain the line and appliances. The only part belonging to appellant was a meter.

The appellee lived in a three-room log house. His kitchen contained a gas plate, or stove. In the rooms at either end he had put in the open fire places a one-inch pipe with holes punched in it for about three feet. These improvised burners had no air mixers. The regulators in the system had become worn out or broken, with the result that the gas flowed directly into the burners from the well, about 500 feet distant. Without the reduction in the pressure by reason of this and the use of the crude appliances much more gas escaped up the open flues than was burned. There was considerable loss of heat as well. The company's evidence is that the pipe line was leaking badly at one place where it had rusted into holes. The appellee had unsuccessfully undertaken to stop the leaks by wrapping the pipe with tape. The only contradictory evidence is that of the appellee and his family that the line was not leaking and that he and his son had tightened it some time be-

fore. It was shown that 150,000 to 200,000 feet of gas per year should be reasonably sufficient for household use in a building the size of the appellee's. But during the nine months preceding the cutting off of the gas his meter registered 530,000 feet.

On October 31, 1932, the company notified appellee that an excessive quantity of gas was passing through his line (56,000 feet for the month ending October 19), and that unless the extravagance and waste were stopped and the conditions corrected, it would discontinue the free gas. On December 14, appellee was again notified and advised that unless they were remedied the gas would be turned off within two days, but no action was taken by the company. On January 20, 1933, another notice was delivered calling appellee's attention to the previous ones and advising him that 129,000 feet had passed through the meter during the previous two months. He was notified that since he had not reduced the consumption or repaired the defective appliances the supply would be cut off on January 23. In addition to these writings, the company's field men had talked with the appellee a number of times and warned him of the consequences.

The company did cut off the gas on January 23, but appellee immediately reconnected it. On February 2 the company filed suit against Jude and obtained a temporary injunction restraining him from interfering with the cutting off of his gas supply until he should install proper appliances and prevent leakage and waste. With that order served, the company's employee went to disconnect the line on the morning of February 3. There was a heavy snow and the day was very cold. The appellee was about 80 years old. We quote his evidence:

"We prepared all the wood we could cut and made the house warm and when we laid down and went to sleep—I had to get up—that night—and the fire had died down—I was sick—was diseased—and was up and running around trying to kindle the fire to warm the room—I failed to get it kindled—we had wood there but I couldn't start a fire soon enough and I got cold—finally I called to my old woman and asked her to get up—I couldn't get the fire kindled. So she got up and kindled the fire."

The plaintiff further testified that he had been in bad health since that night.

The appellant is insisting that it was entitled to a directed verdict because it had the right to discontinue the gas under the contract; it was done under the protection of an injunction; there was no negligence; it was not the proximate cause of the appellee's sickness, and that he was not made ill anyhow. In addition, there are claims of erroneous instructions and rejection of evidence.

Under a provision in a gas lease that the lessor is to have free gas for domestic or household purposes, he is not entitled to an unlimited amount, or to determine arbitrarily what he will take, or to permit gross extravagance or waste. Nor may the lessee arbitrarily or capriciously limit what he may have. He is entitled to such quantity as is reasonably necessary for his domestic use and convenience as natural gas is ordinarily devoted. The quantity should be gauged by what is customarily consumed in similar localities under like conditions with practical or reasonably appropriate appliances. If the lessor takes more or permits waste, he takes the property of the lessee. If the lessee supplies less, he deprives the lessor of part of the consideration for the contract. Willis' Thornton Oil & Gas, sec. 368; Pittsburgh & West Virginia Gas Co. v. Richardson, 84 W. Va. 413, 100 S. E. 220, 9 A. L. R. 86; Hall v. Philadelphia Co., 72 W. Va. 573, 78 S. E. 755; Harbert v. Hope Natural Gas Co., 76 W. Va. 207, 84 S. E. 770, L. R. A. 1915E, 570; Bassell v. West Virginia Central Gas Co., 86 W. Va. 198, 103 S. E. 116, 12 A. L. R. 1398. In the instant case, the express contract specifically defines the use within such general interpretation of the covenant in the lease to be in an economical manner, without waste, and in modern appliances. The appellee, as lessor, agreed that if he should do otherwise, the company had the right to discontinue the supply. That he violated the contract is clearly manifest. There was not slight, but extraordinary leakage and waste—perhaps 750,000 feet a year being used and lost in supplying a three-room house. The company was very considerate. The record contains an agreed order entered in the injunction suit some months later modifying the temporary injunction and declaring the right of the appellee to such free gas as is reasonably necessary for domestic use with proper regulators and economic appliances to be installed by him, and ordering the company, when that had been done, to reconnect the line.

This agreement effectually sustains the claim of the company in this case. The trial court should have directed a verdict for the defendant.

The other contentions of the appellant also seem to be meritorious, but it is sufficient to place the reversal upon the ground indicated, since it goes to the root of the controversy.

Judgment reversed.