## Commonwealth ex rel. Bard, Appellant, *v.* Delaware Division Canal Company et al.

54

Argued May 24, 1938. Before KEPHART, C. J., SCHAF-
FER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Edmund W. Kirby,* with him *Guy K. Bard,* Attorney
General, and *Francis J. Myers,* Assistant Deputy Attor-
ney General, for appellant.

*Wm. A. Schnader,* of *Schnader & Lewis,* with him
*Louis F. Floge, Samuel D. Matlack, Wm. Jay Turner*
and *Nauman, Smith & Hurlock,* for appellees.

*Thomas Ross,* with him *John Ross,* for amicus curiæ.

*Herman N. Schwartz, G. Coe Farrier,* Assistant City
Solicitors, and *Joseph Sharfsin,* City Solicitor, for peti-
tioner.

OPINION BY MR. JUSTICE DREW, October 3, 1938:

This appeal is by the Commonwealth of Pennsylvania
from the dismissal of its bill and amended bill in equity,
brought ex rel. the Attorney General, against the Dela-
ware Division Canal Company and other named defend-
ants, for a decree of forfeiture revesting in the Common-
wealth full and complete title to the Delaware Division
Canal. As an alternative to this remedy, the Common-
wealth, in its amended bill, asks for a decree requiring

the canal company to restore the canal to navigable condition and to resume its operation as a waterway.

The Act of April 21, 1858, P. L. 414, which was declared constitutional in *The Sunbury and Erie Railroad Company v. Cooper*, 33 Pa. 278, authorized the Commonwealth, then owner of the Delaware Division Canal and certain other canals, to convey them to the Sunbury and Erie Railroad Company, the latter "to keep up the same including public and private bridges crossing the said canals as heretofore done by the canal commission, in as good repair and operating condition as they are now; and they shall be and remain public highways forever for the use and enjoyment of all persons desiring to use the same." This act likewise preserved to the Commonwealth's grantee the right, conferred by the Acts of March 20, 1818, P. L. 197, and February 13, 1822, P. L. 21, to use the water of the canal for water supply purposes, "provided it be so done that it shall not at any time interrupt or impede the navigation." Pursuant to the Act of 1858 the Commonwealth conveyed the Delaware Division Canal to the Sunbury and Erie Railroad Company, which shortly thereafter conveyed it to the Delaware Division Canal Company, a corporation chartered by the Governor of the Commonwealth, on July 14, 1858, under authority of the same Act of 1858. The canal company operated the entire sixty miles of the canal, from Easton to Bristol, as a common carrier and public highway from that time to 1931 when, pursuant to the Act of June 26, 1931, P. L. 1387, it conveyed forty miles of the canal, from Raubsville to Yardley, to the Commonwealth. In 1936, however, the Commonwealth withdrew from possession under the conveyance of 1931, the Act of 1931 having been held unconstitutional: *Yardley Mills Co., Inc., v. Bogardus*, 321 Pa. 581. No part of the canal has been used for the purpose of transportation since 1931. The canal company has permitted the construction of embankments across the channel making navigation impossible,

and the Commonwealth, during its possession, lowered bridges across the canal and permitted it to get into general disrepair, likewise preventing the passage of canal boats. The canal company presently uses the canal exclusively to supply water for industrial purposes.

In the present proceeding the Commonwealth is endeavoring to enforce a forfeiture of the title to the entire canal, on the ground that, by the Act of 1858 and the Commonwealth's conveyance pursuant thereto, the title of the Sunbury and Erie Railroad Company through whom the defendant, the Delaware Division Canal Company, derived its title, was upon the express condition that the canal be forever maintained as a public highway. Alternatively the Commonwealth claims that if it is not a condition of the conveyance, but only a covenant that the canal be maintained as a public highway, then it should be decreed that the canal company restore a navigable canal. Joined with the canal company as defendants are the Lehigh Navigation Coal Company, the lessee from the canal company of certain of the lands appurtenant to the canal, the Philadelphia and Trenton Railroad Company, a Pennsylvania Railroad Company subsidiary, to which the canal company has sold a part of the canal property, and the Pennsylvania Railroad Company. The City of Philadelphia has intervened claiming an interest to protect the water supply of Philadelphia. The Delaware Valley Protective Association has filed a brief, *amicus curiæ* under Rule 61, in support of the Commonwealth's claims.

The contentions of the defendant are that the original grant under the Act of 1858 was not subject to any condition, the restrictive terms being only a covenant, and that, in any case, the Act of May 17, 1901, P. L. 261, authorizes the discontinuance of the use of the canal for transportation purposes. The court below found in defendant's favor on each contention and dismissed the bill. This appeal followed.

In considering the questions here involved, the facts found by the learned chancellor and approved by the court below will not be reversed in the absence of manifest error, and are to be given the same weight as the verdict of a jury: *Houghton v. Kendrick,* 285 Pa. 223.

The first question in the case concerns the correct interpretation of the Act of 1858, and the deed of May 19, 1858, from the Commonwealth to the Sunbury and Erie Railroad Company, the predecessor in title of the canal company, since we must determine whether the provision in the act and deed that the canal shall remain a public highway forever, is a condition subsequent, the breach of which would cause a forfeiture, or a covenant, the failure to perform which would give to the injured party, in some circumstances, a right to an action for damages.

The Restatement of the Law of Property, section 45, comment *o,* says: "When an otherwise effective conveyance contains a mere statement of the use to which the land conveyed is to be devoted, or, of the use, in consideration of which, the conveyance is made, such statement alone is not sufficient to cause the estate created to be an estate in fee simple subject to a condition subsequent." To the same effect see *T. W. Phillips G. & O. Co. v. Lingenfelter,* 262 Pa. 500, and 14 Am. Jur. 481. This court in a careful review of the authorities by Mr. Justice WALLING, in *Sapper v. Mathers,* 286 Pa. 364, 366, said: ". . . all provisions which seek to tie up real estate and prevent alienation are strictly construed, and as the deed in question makes no provision for a reversion or forfeiture, none exists. To make the estate conditional the words must clearly show such intent: *Cook v. Trimble,* 9 Watts 15. See also *Brendle v. The German Reformed Congregation et al.,* 33 Pa. 415. . . . [p. 367] The same conclusion was reached by the trial court in the case at bar after a most careful and exhaustive review of the authorities by President Judge MARTIN, which he concludes by saying that: 'It will be seen

that the deed closely follows the wording of the charter, and it is apparent that the purposes for which the conveyance was made, were the purposes for which the association could lawfully hold real estate. None of the technical words usually employed for the purpose of creating a condition appears in the deed. There is nothing to indicate that the consideration paid was not the full value of the land. No restraint was imposed on any alienation of the land. No clause provided for a forfeiture or termination of the estate in case the land ceased to be used for burial purposes. There was no reservation of a right of reëntry on any contingency, and no technical words to create a condition, or other words equivalent thereto. . . .' " The United States Supreme Court in *Stuart v. Easton*, 170 U. S. 383, after a review of the decisions of this state on the subject of conditions subsequent, arrived at the same conclusion. In *Paschall v. Passmore*, 15 Pa. 295, 307, it was said: "Where the language of an agreement can be resolved into a covenant, the judicial inclination is so to construe it; and hence it has resulted that certain features have ever been held essential to the constitution of a condition. In the absence of any of these, it is not permitted to work the destructive effect the law otherwise attributes to it." This is a well-established principle of law, and must be applied in all cases, even though the Commonwealth itself is the grantor.

In the case of *Columbia Railway, Gas & Electric Company v. State of South Carolina*, 261 U. S. 236, certain canal property had vested in defendant's predecessor in title under a state act which contained a provision requiring a portion of the canal to be completed. The canal not having been completed, the State instituted action to recover possession of the property, claiming that the obligation to complete imposed a condition subsequent, the failure to perform which incurred a forfeiture. There, the United States Supreme Court, in holding the provision to be a covenant and not a condition subse-

quent, said (p. 249): "Moreover, the conveyance was absolute and for a valuable consideration, and a mere purpose to attain a particular end, however it may have influenced the legislation, could not have the effect of debasing the fee. . . . (p. 250) When . . . we consider all the circumstances, including the fact that the sale to the defendant was absolute and for a valuable consideration, that there are no express terms creating a condition, no clause of reëntry nor words of any sort indicating such purpose, the conclusion is unavoidable that the obligation in question is a covenant and not a condition subsequent."

Viewing the present case in the light of the foregoing authorities, we are of opinion that the obligation contained in the deed of 1858, executed in pursuance of the act of the same year, is but a covenant, and not, as contended by the Commonwealth, a condition on the fee. What we have is a conveyance, for a valuable consideration, of an absolute title in fee simple, as contained in the language thereof, to-wit: ". . . all the property thereto belonging, or anywise appertaining, and all the estate, right, title and interest of this commonwealth therein, . . ., unto the Sunbury and Erie Railroad Company aforesaid, their successors and assigns . . . forever." Nowhere in said act or deed can there be found any express or implied terms whereby we could say that the reasonable intent of the parties was to create a condition on the fee. Nor is there any clause of reëntry or words of any sort indicating such intent.

Moreover, the Commonwealth is deprived by the Act of 1901, supra, of both remedies it seeks in this proceeding. The act provides, "That any person, corporate or otherwise, vested with the franchise of constructing, maintaining and using, for purposes of transportation, canals or other artificial highways, may, at any time, convert a portion or the whole of the water supply theretofore used for such highways to the uses of domestic manufacturing and commercial purposes, and may to

this end, from time to time, lease, sell or convey the whole or any portion of the same." Language could hardly be more definite, and when we remember that at the time this act was passed canals for transportation purposes were obsolete, it is easily seen why the legislature in such broad terms released all such companies from carrying out that feature of their charters. Other acts authorizing the abandonment of particular canals had already been passed: Act of June 2, 1870, P. L. 1318; Act of May 7, 1889, P. L. 104; Act of March 16, 1899, P. L. 9. Without abandonment it is impossible "to convert . . . the whole of the water supply theretofore used for such highways" to domestic, manufacturing and commercial uses: cf. *Sharon Iron Co. v. City of Erie,* 41 Pa. 341. But the Commonwealth suggests that, being a general act, it cannot apply to defendant canal company, incorporated by a special act. It is said that statutes relating to special subjects are not superseded by general acts that would in terms cover the special subject. As a general proposition this is true *(Rutherford Water Co. v. Harrisburg,* 297 Pa. 33), but cannot apply to a situation where, as here, so far as we find, all canal companies to which the Act of 1901 might apply were created by special acts.

The Commonwealth argues that the Act of 1901 is not applicable to the canal company, a corporation specially created before the adoption of the present Constitution, because it does not hold its charter subject to the provisions of the Constitution. We take the opposite view, because on October 1, 1931, the canal company by proper corporate action accepted the provisions of Article XVII of the Constitution, and on October 8, 1931, filed a certified copy of such action in the office of the Secretary of the Commonwealth. The Article, in section 10, provides that: "No railroad, canal or other transportation company, in existence at the time of the adoption of this article, shall have the benefit of any future legislation by general or special laws, except on condition of com-

plete acceptance of all the provisions of this article." The canal company thereby became entitled to take advantage of the provisions of the said Act of 1901.

The Constitution in Article XVII deals specifically with general or special laws enacted after 1874, benefiting railroads, canals, or other transportation companies in existence at the time of its adoption. Obviously section 10 thereof prescribes the basis upon which the canal company might avail itself of the benefits of the Act of 1901. All that is required is that the terms of the Constitution be, in fact, accepted. The canal company duly accepted those terms, and, although acceptance was long delayed, is entitled to the resulting benefits, in this case the right to abandon operation of the canal for transportation purposes.

The Commonwealth suggests, however, that if the provisions of the Act of 1901 were available to the canal company, the Act of 1931, supra, empowering it to convey a part of the canal to the Commonwealth not to be further used for transportation purposes was unnecessary. Such is not the case. The sole purpose of the Act of 1931 was to comply with the terms of section 513 of the Administrative Code (Act of April 9, 1929, P. L. 177), which is as follows: ". . . a department, board, or commission, shall not accept any gift of real estate, or of any interest in real estate, without specific authority from the General Assembly so to do." Pursuant to this requirement the Act of 1931 authorized the Commonwealth "acting through the Department of Highways [to] acquire, by gift, all or any part" of the lands of certain canal companies. Consequently, the fact that the Act of 1931 was enacted is no indication that the canal company cannot by accepting the terms of the Constitution have the benefit of the Act of 1901.

The Commonwealth contends further that the Act of 1901 is unconstitutional in that it grants powers prohibited by Article XVII, section 5, of the Constitution, which provides: "No incorporated company doing the

business of a common carrier shall, directly or indirectly, prosecute or engage in mining or manufacturing articles for transportation over its works; nor shall such company directly or indirectly engage in any other business than that of common carriers, or hold or acquire lands, freehold or leasehold, directly or indirectly, except as shall be necessary for carrying on its business. . . ." Canal companies are common carriers (Article XVII, section 1), and, so long as they remain such, they must not engage in another business to which they could give transportation advantages in preference to competitors who do not control transportation facilities. But where, as here, the business of common carrier has been discontinued, there is no reason why such company may not be devoted to whatever other legal use it may be adaptable. Indeed, here the canal company has from its inception had the right, within limits, to sell water. It did not lose its franchise to do so by accepting the terms of the Constitution: *Blauch v. Johnstown Water Co.*, 247 Pa. 71. Hence, we conclude that the Act of 1901 as applied to the facts of this case is constitutional.

The Commonwealth is not entitled to a forfeiture of the canal company's title, or to compel it to restore the canal to a navigable condition. Needless to say, however, this does not give the canal company warrant to permit the canal to become a source of contamination or an annoyance to near-by residents. It must at all times maintain it in such manner as not to become a public nuisance: *Delaware Division Canal Co. v. Commonwealth*, 60 Pa. 367. Nor may the canal company utilize its sources of water without limit. The Act of 1901 gives the right to "convert a portion or the whole of the water supply *theretofore used for such highways* [i. e., canals] to the uses of domestic, manufacturing and commercial purposes. . . ." (Italics added.) The language of the act definitely limits the canal company's user to such amount of water as was used for highway purposes, the amount of which can be scientifically calculated. The

64

company may not by pumping or otherwise increase the flow and thereby take more water than was formerly used in the normal operation of the canal for the purpose of navigation.

After the Commonwealth filed its bill in this case, and before the case was heard by the chancellor, the Act of July 2, 1937, P. L. 2778, was passed. It declared forfeitures of Commonwealth grants of public works, canals, etc., "where the conditions, covenants or terms of such grants have been or shall hereafter be breached" and authorized the Attorney General to institute appropriate proceedings to enforce the provisions of the Act; ratifying any and all pending proceedings. Thereafter, by stipulation of the parties, the Commonwealth amended its bill to include, among other things, an averment of the passage of this act. The contention is that upon refusal to restore the canal to a navigable condition, the Commonwealth, pursuant to the terms of the act, was entitled to a decree of forfeiture. The act has no application here for the reason that there has been no breach of any condition or covenant of the act or of the deed of 1858. As already said, the Act of 1901 authorized the defendant canal company to convert "the whole of the water supply theretofore used for such highways" to commercial uses, which of course meant abandonment of the canal for navigation.

The City of Philadelphia petitioned to intervene, desiring protection of its water supply from the Delaware. Intervention was refused by our order of May 23, 1938, without prejudice to the city's right to raise the questions presented in its petition in any future proceeding. There is no threat to the city's water supply in the canal company's present user. If at any time its supply is thereby appreciably impaired, it will have its remedy by appropriate proceeding.

All the assignments of error are overruled, and the decree of the court below is affirmed, at the costs of appellant.