## Warfield Natural Gas Co. v. Moore et al.

Feb. 9, 1940.

Kirk & Wells and Harold A. Ritz for appellant.

C. F. Pace for appellees.

OPINION OF THE COURT BY SIMS, COMMISSIONER— Reversing.

This petition in equity was filed by the appellant in the Martin Circuit Court wherein it sought to enjoin the appellees from using free gas in a tenant house which was constructed on the farm more than 30 years after an oil and gas lease was executed thereon, and which lease provided the lessor should have free use of gas to light and heat his buildings on the premises. The case was submitted on an agreed stipulation of facts and the chancellor held that the plaintiff was not entitled to an injunction, the petition was dismissed and this appeal follows.

On December 31, 1897, William H. Blankenship, Sr., executed an oil and gas lease upon his 700-acre farm whereon he resided. It was the usual oil and gas lease taken in that community and reserved a royalty to the lessor of one-eighth of the oil and provided for a payment to him of $100 per year for each gas well so long as gas was taken therefrom. The lease form did not provide the lessor should have free gas, but there was written by hand on the margin of the lease: "If gas is found, said first party is to have the free use of enough gas to heat and light his buildings on said premises." At the time the lease was executed, William H. Blankenship, Sr., resided in the same dwelling now occupied by the present owner of the farm. The title to the land passed from William H. Blankenship, Sr., to his son, William H. Blankenship, Jr., and the latter conveyed it to his wife, Ella Blankenship, the present owner; and the appellant by mesne conveyance became the owner of the lease June 28, 1923.

Three producing wells were drilled on the lease and for many years William H. Blankenship, Sr., used gas free of charge produced from the lease for domestic purposes in the dwelling that was located on the premises at the time the lease was executed in 1897. He and his wife were getting old and were in need of someone to care for them and to run the farm, so in 1930 they built a tenant house on the farm some 500 feet from their residence to be occupied by their son-in-law, the appellee Moore. He paid no rent, looked after this elderly couple and operated their farm. Mr. and Mrs. Blankenship equipped this tenant house with gas fixtures and extended the service line, which supplied free gas to their dwelling, to the tenant house. When appellant discovered gas was being furnished the tenant house through the line servicing the residence, it sought to disconnect the tenant house from this line. Appellee objected to this and offered resistance, whereupon appellant filed this suit seeking an injunction against Moore from using the gas, and against both Moore and Mrs. Blankenship from interfering with it in disconnecting the tenant house from the gas line servicing the Blankenship dwelling. It appears from the record Mr. Blankenship died before this suit was instituted.

This appeal presents only one question: Does the provision written on the margin of the lease authorize the free use of gas in this tenant house? Or to state it differently, does the covenant of free gas to heat and light the buildings on the premises extend to houses subsequently erected thereon, or is the free gas limited to those buildings on the premises when the lease was executed?

One of the cardinal rules in the construction of contracts is to determine the intention of the parties, and in so doing the court may consider their situation, circumstances and the conditions surrounding them, also, the subject matter of the contract and the object the parties sought to obtain by their contract, Hawkins & Chamberlain v. Mathews, 242 Ky. 732, 47 S. W. (2d) 547; Monroe's Admr. v. Federal Union Life Insurance Company, 251 Ky. 570, 65 S. W. (2d) 680. Applying this rule, we have no trouble reaching the conclusion that when the parties to the original lease contracted for free gas ''to heat and light his buildings on said premises'' they in-

tended it to apply to the dwelling that was then on the premises. Certainly, they meant to limit it to any buildings which were then on the premises, and did not intend free gas should be furnished to subsequently erected buildings. Had the dwelling been destroyed or razed, and another erected in its place, the lessors would have been entitled to free gas to heat and to light it. But in the instant case the tenant house was not built in lieu of the dwelling on the premises, but was in addition thereto. It is customary for oil and gas leases in this state, indeed, it is almost a universal custom for such leases throughout the United States, to allow the lessor sufficient free gas to heat and light the dwelling on the leased premises. It may be presumed that the parties to this contract were cognizant with this practice and had it in mind when they entered into the lease contract; Bassel v. West Virginia Central Gas Company, 86 W. Va. 198, 103 S. E. 116, 12 A. L. R. 1398; Hall v. Philadelphia Company, 72 W. Va. 573, 78 S. E. 755. We have held that the covenant in the lease allowing free gas to the lessor does not grant him an unlimited amount of gas, but entitles him only to such a quantity as was reasonably necessary for domestic use, Warfield Natural Gas Company v. Jude, 261 Ky. 113, 87 S. W. (2d) 108. In Harbert v. Hope Natural Gas Company, 76 W. Va. 207, 84 S. E. 770, L. R. A. 1915E, 570, in construing a free gas covenant in a lease the court said that the lessor was not so much concerned as to where the gas it furnished was to be used, as it was in the quantity of free gas the lease contract obligated it to furnish the lessor.

Some light is shed on the question before us by the case of Maysville & Lexington Turnpike Company v. Linville, 9 Ky. Law Rep. 684. There, Governor Metcalf granted the company the privilege of quarrying rock from his farm in consideration of it agreeing to allow him, his family and successors in title, free use of the turnpike. We held that this contract did not mean that each heir, or each vendee who might thereafter acquire a part or parcel of the farm, should have free use of the turnpike, but that privilege was only intended to be extended to the owner of the entire farm. In McMullin v. Pritt, 103 W. Va. 582, 584, 138 S. E. 384, 386, a tract of land containing 74¼ acres was conveyed with the grantor reserving all minerals with the exception that the grantees were given the privilege of free coal for house-

hold purposes. In construing the reservation in that deed the court said:

> "Its enjoyment was limited to one family. It is not such a privilege as is practicable to apportion to the several grantees of Matheney * * *. It could not pass to every grantee of a small portion of the 74¼-acre tract. Otherwise, what was originally designed as one right could be indefinitely multiplied, and, instead of one family using coal as many families would have that privilege as there were subdivisions of the 74¼ acres."

Should appellee not be limited to the use of free gas for the dwelling house on the premises at the time of the lease, or one subsequently built in lieu thereof, "what was originally designated as one right could be indefinitely multiplied" by the erection of many buildings on the large acreage embraced in the lease, and thereby all the gas produced from the lease could be consumed without payment therefor. It cannot be logically argued that such was the intention of the parties, or was within their contemplation when the lease contract was entered into in 1897. We cannot escape the conclusion that it was the intention of the lessor and the lessee at the time the original lease contract was entered into that the lessor was only to have free gas for domestic use in the dwelling house then on the premises.

The judgment is reversed with instructions to the chancellor to enjoin the appellee, Moore, from using gas from the appellant's wells in the house he is occupying and to enjoin appellees, Moore and Mrs. Blankenship, from interfering with or preventing appellant from disconnecting the service line from the tenant house.

Judgment reversed.