## Sanford *v.* Witherspoon, Appellant.

Argued May 6, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

Bill in equity. Before MARSHALL, J.

*Clarence B. Nixon,* for appellant.

*Drayton Heard,* of *Heard & Heard,* for appellee.

OPINION BY PARKER, J., October 4, 1940:

This is an action in equity brought by Jesse H. Sanford, the owner of a tract of land in Allegheny County, against P. A. Witherspoon, who was operating a gas well on plaintiff's land under a written contract between the parties. The plaintiff prayed for an order restraining the defendant from removing the materials in the gas well or interfering with its operation and for an accounting of profits. At an early stage in the proceedings it developed that plaintiff was entitled to an accounting from defendant. This was ordered and made

when the controversy developed into a question as to the validity of certain credits claimed by defendant and disputed by plaintiff.

The court below entered a final decree determining that plaintiff and defendant were equal owners of the gas well with "material, equipment and appliances in and appertaining to the same" subject to the terms of the written contract and directing that defendant pay to plaintiff the sum of $1,066.17. The order was made without prejudice to anyone for a later adjudication respecting claims for free gas after the date of the last hearing, October 14, 1938, or "respecting any other rights or claims for gas used or sold" after the same date "as affected by change of ownership of the premises whereon said gas well is situate." The defendant has appealed and we are all of the opinion that the decree should be affirmed.

Neither party complains of the decree of the court as to the ownership of the gas well and equipment. Appellant now claims that he is entitled to additional credits on his account, the main contention being that plaintiff used more free gas than he was entitled to have and that he should be charged with the value of such excess.

The plaintiff, prior to September 6, 1928, purchased a gas well which one of the larger utilities had drilled on a twenty-two acre tract of land owned by him. He used the gas produced therefrom to supply his buildings on the premises with heat and light. Due to neglect, the well ceased to produce gas sufficient for that purpose and plaintiff entered into negotiations with defendant who had experience in operating gas wells. This culminated in a written contract dated September 6, 1928, whereby Witherspoon was to operate the premises for oil and gas as long as they were found in paying quantities. If gas alone was produced in sufficient quantities to justify marketing, each was to have one-

half of the proceeds received from the sale of gas. The contract also provided: "The Lessor [plaintiff] shall have free Gas from said well for use in dwellings located on the Premises. Also it is understood and agreed, the operating expenses of well now located on the premises are to be borne jointly by both parties from the revenue received from the sale of Gas from the Premises." As was contemplated by the parties the operations undertaken consisted of rehabilitating the gas well and placing it in production. No new wells were drilled, but sufficient gas was produced to meet the requirements of the plaintiff with respect to heat for domestic purposes and also sufficient to sell a considerable surplus to a utility.

There are now and have been since long before the gas contract was made three buildings on the premises, a dwelling house occupied by Sanford and his family, a dairy building for finishing products, and a garage, in addition to barns with which we are not concerned. The dairy building and garage contained apartments occupied by tenants as living quarters. These buildings were equipped with central heating plants in which either gas or coal could be used as fuel. Boilers were located in the basements of the buildings and heat was distributed by hot water systems. The defendant was familiar with all these circumstances when the contract was made.

The defendant does not dispute the right of the plaintiff to have free gas for use in the dwelling occupied by him but does claim that he is entitled to one-half the value of gas consumed in heating the dairy building and garage and a like proportion of gas alleged to have been wasted by plaintiff.

Throughout the history of the natural gas industry, it has been a common practice for the lessee in a gas lease as part of the consideration for the grant to agree to furnish free gas to the lessor for domestic purposes.

Such a clause is commonly known as a "free gas clause." As free gas tends to promote a waste of the commodity, frequent controversies have arisen over just such clauses, with respect to the purpose for which gas might be used and with respect to the quantity that might be consumed.

The clause in this contract limits the use of free gas to such as is used in dwellings. This limitation implies that the gas is to be used for ordinary domestic purposes. Viewing the contract in the light of the circumstances under which it was made, that defendant knew that there were on the premises three buildings occupied as dwellings at the time the contract was made, when the parties employed the plural of "dwelling" to indicate the buildings in which free gas was to be supplied, it seems clear that plaintiff was entitled to gas for all three dwellings even though two of them had the characteristics of apartments and were situated as they were. That an apartment so-called is a dwelling is not open to argument: *Johnson v. Jones*, 244 Pa. 386, 389, 90 A. 649. Any and every settled habitation of a man and his family is his house or dwelling: *Mason v. The People*, 26 N. Y. 200, 202.

We say with equal confidence that a dairy building or a garage, when put to its ordinary use, is not a dwelling. While the plaintiff was entitled to free gas for domestic purposes in the apartments in those buildings he was not entitled to have gas to heat and light the portions of the buildings that were not used as dwellings. The quantity of gas to which this plaintiff is entitled is not unlimited, but is only such amount as is customary and reasonable taking into account the size and character of the dwellings. The quantity should be gauged by what is customarily consumed in similar localities under like conditions with reasonably efficient appliances. The defendant does not have the right to arbitrarily determine what the amount shall be: *Pgh.*

& *W. Va. Gas Co. v. Richardson*, 84 W. Va. 413, 100
S. E. 220, 9 A. L. R. 86; *Warfield Nat. Gas Co. v. Jude*,
261 Ky. 113, 87 S. W. 2d 108.

To show waste the defendant depended upon evidence
tending to prove that for two years after the contract
was made plaintiff used about 65 per cent more gas
than he had used for a like period prior to the making
of the contract when he was buying gas from a public
utility. This evidence furnished no reasonable basis
for comparison since the conditions were not shown to
be the same. In fact there was evidence showing that
they differed for it appeared that when plaintiff was
buying gas he was also using coal for heat in some of
the buildings and particularly that at times the apart-
ments were heated by coal. In addition, an experienced
gas man testified that the amount of gas consumed by
plaintiff was not excessive for the character of the dwell-
ings on the Sanford property.

While Sanford was not entitled to have free gas for
other than domestic purposes the defendant failed to
furnish any basis for a finding by the chancellor in
favor of the defendant on that account. Although
there were supply pipes passing from the boilers in the
basements to the apartments and through the space
used as a garage and the space where milk was treated,
that was a mere incident to the system used and there
is nothing in the record to indicate that the heating
plants were not reasonably economical. It was the same
system that had been used by plaintiff when he pur-
chased gas from a utility and that was in use when the
contract was made. Witherspoon lived in one of these
apartments for a time, paid rent and used the gas as
part of the return for which rent was paid. Yet he
raised no objection for a number of years as to the
manner in which gas was used and he did not complain
until after the relations between the parties became
strained. While there were radiators in the dairy por-

tion, these were turned off at a date not shown. There was one radiator in the garage, but there was no evidence as to the extent to which it was used. There was not any proof from which the chancellor could have found or even could have roughly approximated the gas that would have been consumed by reason of the presence of this one radiator in the garage. The evidence does not disclose the size of the dairy buildings or garage or the relative space occupied by the dwellings.

While we may conjecture that the plaintiff used a negligible amount of gas to which he was not entitled, this was more than offset by the defendant's own admission that he did not pump and operate the gas well for a considerable period and proofs to the effect that he did not operate it in a workmanlike manner with the result that plaintiff was deprived at times of a sufficient supply of free gas in his own dwelling and lost additional profits. We are satisfied from reading the record several times that substantial justice was done in rejecting this claim.

The appellant also argues that he was entitled to cash credits aggregating $970.67, which were rejected by the court below. It is a sufficient answer to say that the allowance or rejection of these items involved pure questions of fact, largely a question of credibility, and the chancellor, affirmed by the court below, accepted the version of plaintiff and not that of defendant. "The facts found by the learned chancellor and approved by the court below will not be reversed in the absence of manifest error, and are to be given the same weight as the verdict of a jury": *Com. ex rel. Bard v. Del. D. Canal Co.*, 332 Pa. 53, 58, 1 A. 2d 672. The court below did not reject these credits, as a matter of law, because they had not been claimed in a previous account rendered plaintiff by defendant, but the court did, as it had a right to do, take that fact into account in determining

the preponderance of evidence. We might add that the proofs were ample to support the findings.

In affirming the decree we do so with the understanding that defendant is not precluded from claiming credit for the value of a proper proportion of any gas used after October 14, 1938, for heating parts of the buildings, which parts are not used as dwellings.

Decree affirmed at cost of appellant.