**HOLLY CREEK PRODUCTION CORPORATION, Appellant,**

v.

**Robert Lee ROSE, Appellee.**

No. 2008–CA–000260–MR.

Court of Appeals of Kentucky.

March 27, 2009.

Rehearing Denied May 13, 2009.

Stephen G. Allen, Ashley W. Ward, Jennifer E. Drust, Lexington, KY, for appellant.

Brian N. Thomas, Christopher M. Davis, Winchester, KY, Brian N. Thomas, Winchester, KY, for appellee.

Before: CLAYTON, MOORE, and STUMBO, Judges.

## OPINION

CLAYTON, Judge.

This appeal is from a decision of the Wolfe Circuit Court terminating a lease between the appellant, Holly Creek Production Corporation ("Holly Creek"), and the appellee, Robert Lee Rose ("Rose").

## FACTUAL BACKGROUND

Holly Creek executed an oil and gas Lease Agreement (the "Lease") on June 27, 1967. The Lease provided that it was binding on the successors and assigns of the signatories. In late 1983, Rose purchased the property which was the subject of the Lease. There was also executed a Lease Amendment (the "Amendment") dealing with the same property and the existing gas lease on November 8, 1977. On April 15, 1998, Rose informed Holly Creek that he was terminating the Lease. Rose asserted that Holly Creek had failed to make monthly royalty payments since January 13, 1997. Rose also set forth in his communication that he would hire someone to disconnect the existing wells; however, he did not do so.

In April of 2000, Rose filed an action in Wolfe Circuit Court alleging that his termination of the Lease was proper and that Holly Creek was trespassing on his property. Rose also asked to recoup royalties on gas removed from the premises. The recoupment count was based upon an order entered May 14, 2003, which ordered Holly Creek to pay $7,254.76 into an escrow account "plus any further sum which [Holly Creek] admits is due [Rose] since June 6, 2002." Between August 5, 2003, and June 4, 2007, a total of $22,593.25 was paid into escrow by Holly Creek based upon the order of the trial court. On June 1, 2007, Rose moved the trial court to withdraw the funds from the escrow account, and his motion was granted on June 7, 2007.

On August 7, 2003, the trial court ruled that "the Lease between the Parties has not been and cannot be terminated for [Holly Creek's] failure to pay production royalties to [Rose] in a timely fashion." Order entered August 7, 2003. On July 5, 2004, counsel for Rose sent a letter to Holly Creek's counsel requesting the latter to bury pipelines on the property below plow depth within sixty days pursuant to the Lease, or the Lease would be terminated by Rose. On April 2, 2007, Rose filed a motion for order to terminate lease with the trial court based upon Holly Creek's failure to bury the pipeline. On May 25, 2007, Holly Creek countered with a motion to strike Rose's motion, and Rose subsequently withdrew his motion.

Rose then amended his complaint, asserting that the Lease was terminated pursuant to notice given on April 15, 1998. Rose based this assertion on the failure to pay royalties as well as Holly Creek's failure to bury the pipeline as requested. On September 19, 2007, Holly Creek moved

the trial court for summary judgment dismissing Rose's action and entering a judgment in its favor on its counterclaim. Rose made a cross-motion for summary judgment in response to Holly Creek's motion.

On November 14, 2007, the trial court entered judgment in Rose's favor on all counts by signing his tendered order. The order found that Holly Creek had breached an express covenant of the Lease when it failed and/or refused to comply with Rose's request to bury the pipeline. The trial court also found that Holly Creek's breach supported a forfeiture of the Lease, and Holly Creek was ordered to remove its lines and caps within ninety days of the entry of the judgment.

Holly Creek made a motion to alter, amend, or vacate the order, and Rose agreed to amend to allow Holly Creek 365 days to comply. The trial court then made this interlocutory order final and appealable. Thereafter, Holly Creek prepared a formal order which summarized the trial court's order, and it is from the November 14, 2007, order as amended that Holly Creek appeals.

## DISCUSSION

Holly Creek begins by arguing that the trial court erred in finding that it had a duty to bury its pipelines at its sole expense and by holding that the failure to do so was a material breach of the Lease. Holly Creek contends that the trial court's conclusion that Rose had a unilateral right to require it to relocate existing pipeline failed to address whether the requirement to bury the pipelines to "plow depth" was applicable to a rocky, heavily wooded, and non-agricultural terrain.

▉ The Lease provides that "[w]hen requested by the lessor, lessee shall bury its pipe lines below plow depth." The land which is the subject of the Lease is steep, rocky, heavily wooded and not farmland. Holly Creek contends in its brief that "[c]learly the intention of [the] provision[ ] in the lease was to accommodate agricultural use of the surface on those portions of the land that were being used for cultivated crops, and hence allow the two uses to coexist." Appellant's Brief at p. 8, fn. 2.

One of the cardinal rules in the construction of contracts is to determine the intention of the parties, and in so doing the court may consider their situation, circumstances and the conditions surrounding them, also, the subject matter of the contract and the object the parties sought to obtain by their contract[.] (citations omitted).

*Warfield Natural Gas Co. v. Moore*, 281 Ky. 689, 136 S.W.2d 1086, 1087 (Ky.1940).

▉ Holly Creek contends that the trial court erred in ordering the Lease forfeited, as such is contrary to Kentucky law and Kentucky Department of Oil and Gas ("KDOG") regulations. It points to the fact that Rose purchased the property upon which the pipelines stand with full knowledge that they existed above ground.

In Kentucky, there are three distinct grounds pursuant to which an oil and gas lessee may lose his interest in a lease. The first ground is forfeiture. "With respect to an oil and gas lease, the ground of forfeiture is the breach of an express or implied covenant, condition or obligation of the lease." (internal citations omitted).

*Hiroc Programs, Inc. v. Robertson*, 40 S.W.3d 373, 377 (Ky.App.2000).

The trial court found that "the defendant breached an express covenant of the original Lease when it failed and/or refused to comply with the plaintiff's request in 2004 to bury its above-ground gathering lines." Order entered November 14, 2007 at p. 2, paragraph 4. As a result of finding

the breach of an express covenant, the trial court found "sufficient grounds to forfeit said Lease and Lease Amendment and to terminate the defendant's rights thereunder, in light of the standard as set forth under *Hiroc* . . . ." The trial court also specifically held that the burden was on Holly Creek to bury the line pursuant to the terms of the Lease.

Holly Creek cites to 805 Kentucky Administrative Regulations (KAR) 1:190 Section 11(1) which provides as follows:

> Burial of a gathering line. The operator shall bury a gathering line or portion thereof that crosses agricultural land or that would otherwise interfere with the use of a preexisting private roadway, if requested to do so by the owner of the surface of the agricultural land or of other land to which access would be affected, prior to the installation of the gathering line to protect it from damage. The gathering line shall be buried to a minimum depth of twenty-four (24) inches, except where solid rock is encountered, in which case the minimum depth of burial shall be twelve (12) inches, if practical. If an underground structure or other geologic or economic condition prevents a gathering line from being buried in accordance with the standards set out above, or if there is an agreement between the surface owner and the operator whereby the minimum standard is waived, the line may be installed at less than the minimum depth or above ground.

■ The Lease was entered into on June 27, 1967. It was around this time that the construction of the pipelines began. Holly Creek provided the Lease, which Roscoe and Hazel Tyler originally agreed to, binding subsequent owners. Had Holly Creek desired to put an end date to the time in which lines would have to be buried, it could have done so. Instead, the Lease is silent as to any date after which the landowner may request the pipeline be buried. "When a contract is plain, unambiguous and fair, not vitiated by fraud nor mistake in its execution, the courts are not authorized to make for the parties to it a different one, or to construe it contrary to its express terms." *Johnson v. Edwards*, 230 Ky. 485, 20 S.W.2d 76, 77 (1929) (citation omitted). "Furthermore, where a contract is free from ambiguity, 'it needs no construction and will be performed or enforced in accordance with its express terms.'" *First Commonwealth Bank of Prestonsburg v. West*, 55 S.W.3d, 829, 836 (Ky.App.2000) (citation omitted). We construe the Lease as it was written and find that there is no end date to the landowner's option of requesting the lines be buried. Therefore, Holly Creek is to bury the pipelines. The cost is to be determined by the court. Since we are finding that the Lease must be enforced, the Lease is not forfeited.

■ Holly Creek next contends that the trial court erred in ruling that Rose was entitled to increased royalty payments from farm-tap sales. It argues that farm-tap sales are volumetrically included in royalty calculations, which are all that is required by the Lease. The Amendment provides that royalties will be paid:

> (b) on gas, including casinghead gas or other gaseous substances, produced from said land, and sold or used off the premises for the extraction of gasoline or other product therefrom, the market value at the well of one-eighth of the gas so sold or used by Lessee, provided that on gas sold by Lessee the market value shall not exceed the amount received by Lessee for such gas computed at the mouth of the well, and on gas sold at the well, the royalty shall be one-eighth of

the amount realized by Lessee from such sale.

The trial court found:

1. By virtue of the Lease Amendment, the defendant obligated itself to pay a royalty of the market value of one-eighth (1/8) of the gas sold or used by the defendant, and on gas sold at the well, the royalty being one-eighth (1/8) of the amount realized by the defendant from such sale. The Court finds that all gas marketed by the defendant is sold downstream from the plaintiff's wells via the defendant's gathering system and, as such all such sales are subject to the royalty provision of the Lease Amendment.

2. To calculate the royalties owed to the plaintiff, the defendant must determine and disclose the percentage of its gas which is sold to all farm-tap customers and the percentage of its gas which is sold to the defendant's transmission company and then calculate the royalty based on the combination of the two sales.

Order entered November 14, 2007.

Rose agrees as to the verbage of the Lease regarding royalties; however, he contends that the only rational meaning for the term "market value" is whatever a party is willing to pay for the gas which is produced from the wells. He also argues that any outside agreements regarding value between Holly Creek and others are immaterial to what he is owed as he was not a party to those agreements. He also asserts that nothing in either the Lease or Amendment excludes farm-tap customers from the calculation of royalties.

While Rose cites to *Hiroc*, 40 S.W.3d at 373, in support of his argument, we find that *Hiroc* (which dealt with a failure to market gas produced) is not applicable on this issue. Rose contends that there was no genuine issue of fact as it was clear that farm-tap sales were made by Holly Creek. We agree. The trial court properly concluded that there was no genuine issue of material fact. The issue, therefore, is whether the trial court correctly held that the farm-tap amounts should be included in the calculation of royalties. We agree that they should.

The Amendment sets forth a method for calculating royalties based upon volume and the price obtained. Clearly, any gas which is sold to any customer should be included in the volume with the amount of royalties to be decided based upon the "market value" of that amount. The trial court, therefore, correctly found in favor of Rose on this issue.

■ The final issue in this case is whether the trial court erred in denying Holly Creek's motion for summary judgment based upon its counterclaim. Holly Creek argued that it moved for summary judgment only upon the issue of damages based upon legal fees incurred to defend against Rose's claim of trespass. Rose's original complaint set forth a cause of action for trespass. Specifically, the trial court held:

8. While the plaintiff believed in good faith that the defendant was in trespass between the time of the entry of the default judgment herein until said judgment was vacated in December, 2000, the Court finds no evidence indicative of damage to the defendant.

Order entered November 14, 2007.

We do not find that the trial court abused its discretion in so finding. While Holly Creek may have expended funds to defend itself in a trespass action, Rose's bases for arguing in favor of trespass appear to be in good faith based upon his understanding of the entry of judgments.

Thus, we affirm the decision of the trial court on this issue.

In conclusion, we affirm the Wolfe Circuit Court's decision regarding the calculation of royalties to include farm taps as well as its decision to dismiss Holly Creek's counterclaim. We reverse the Wolfe Circuit Court in finding that the Lease is forfeited. The Lease is to be enforced, and we remand this matter to the Wolfe Circuit Court for a determination of which party is to bear the cost for burying the pipelines.

ALL CONCUR.